IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL INDICTMENT |
| v. | NO. 1:10-CR-186-RWS-GGB |
| PATRICIA ELIZABETH HOLGUIN, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION

Defendant Patricia Elizabeth Holguin ("Defendant") is charged with seventeen counts of illegally transporting aliens for financial gain into the Northern District of Georgia, in violation of Title 8, United States Code, Section 1324(a). Pending before this court is Defendant's Motion to Suppress Evidence [Doc. 24] [1]. An evidentiary hearing on this motion was held before me on March 14, 2011. After the hearing, Defendant was given an opportunity to file a brief, but declined to do so. For the reasons discussed below, I recommend that Defendant's motion [Doc. 24] be **DENIED**.

_____

[1] Also pending is Defendant's Motion to Continue Arraignment filed on the day her original arraignment was set. Defendant was re-summonsed and arraigned at a later date; therefore this motion [Doc. 16] is hereby **DENIED AS MOOT.**

### I.   FACTS

On April 15, 2010, Sgt. David Stewart of the City of Atlanta Police Department ("APD") was patrolling in a marked police car on Interstate 20 on the west side of the city of Atlanta. He was passed by an older van with dark tinted windows. He observed that in the tag area of the van was a white piece of paper that was flopping in the wind, such that he could not see any numbers or letters. The paper in the tag position of the van appeared to be the type of paper that would come out of a copy machine. Sgt. Stewart had never seen that type of paper in the tag position, and he decided to pull the vehicle over to investigate further.

Sgt. Stewart activated his blue lights and stopped the van. He approached the van from the passenger side. As he approached the van, the front passenger rolled down the window. When the window came down, Sgt. Stewart smelled what he described as "a horrific smell of urine and feces". He looked inside the vehicle but could only see the first row seat. The people on that seat appeared very dirty, very tired, and scared. The driver (later identified as Defendant) told the officer that she was taking the passengers to a birthday party. However, Sgt. Stewart did not believe that the passengers looked as if they were headed to a birthday party.

Sgt. Stewart asked Defendant for her driver's license. Defendant asked why she was stopped, and Sgt. Stewart explained that he stopped her because she had a paper

2

tag that he could not read.  Defendant provided her driver's license.  Sgt. Stewart asked where she was coming from and where she was going, and Defendant responded that she had come from Houston and she was supposed to drop off her passengers at a birthday party in Gwinnett County.

Sgt. Stewart went back to his police car and began checking out the driver's license and the van.  On closer inspection, the tag appeared to be a copy of a temporary tag from Texas.  Sgt. Stewart did not believe that the tag was valid.  He then received information on his radio that the van was not on file anywhere in the country.

Sgt. Stewart then contacted the El Paso Intelligence Center (" EPIC") and provided the operator with Defendant's name and date of birth.  He received information that there were two open Immigration and Customs Enforcement ("ICE") investigations in El Paso involving Defendant and that she had been the subject of a traffic stop in North Carolina where $20,000 was seized from her vehicle.  The EPIC system also advised that Defendant had ties with Colombian cartels and was being investigated for human smuggling and cocaine smuggling.  Sgt. Stewart then tried to contact a law enforcement officer with ICE. Shortly thereafter an ICE agent contacted him, and Sgt. Stewart relayed the information he had obtained along with the fact that there were approximately 15 people in the van.

AO 72A
(Rev.8/8
2)

Approximately 20-30 minutes later ICE agents arrived on the scene. In the meantime, Sgt. Stewart called for APD's canine unit. He also requested consent to search from Defendant. Defendant signed a consent to search form.

Once the ICE agents arrived on the scene, everyone was removed from the van and the van was searched. Although the canine alerted on an area of the van, no drugs were found in the van.

The interior of the van was in bad condition. The van smelled of urine and there appeared to be urine stains on the interior of the vehicle. A bag containing feces was found in the van.

When ICE Agent Steven Ledgerwood arrived on the scene, he concluded that the van was a "load vehicle", that is a vehicle used to transport illegal aliens. There were at least 15 people in the van. Agent Ledgerwood spoke to each of the occupants to get their identification information. All of the occupants were undocumented aliens.

He also questioned the Defendant and asked if she was willing to come to the ICE office to be interviewed. She agreed to do so. Once she was in the ICE office, an agent advised her of her Miranda rights in Spanish and also asked for consent to search her cell phones and her vehicle. The Miranda waiver form was read to Defendant, and she indicated that she understood her rights and was willing to speak to the agents

without a lawyer.  She signed and dated the waiver of rights form.  She also signed and dated a consent to search form after it was explained to her.

## II.    DISCUSSION

Defendant's motion to suppress evidence, filed before the evidentiary hearing, alleged that the Atlanta Police Department stopped Defendant without reasonable suspicion or probable cause and that agents with the United States Department of Homeland Security arrested her without a warrant and without probable cause.  She also alleges that her vehicle was searched without a search warrant and presumably moves to suppress any statements or evidence seized from her person or vehicle.

Defendant was given an opportunity to file a brief after the evidentiary hearing, but declined to do so.  After consideration of the evidence presented at the hearing, I find that the unreadable paper tag provided a sufficient basis for the Atlanta Police Department to stop Defendant's vehicle. The smell of urine and feces emanating from the vehicle, and the number and appearance of the passengers, provided a further basis to continue the investigation.  Ultimately the information from EPIC, the presence of at least 15 undocumented aliens in Defendant's vehicle, and the conditions inside the vehicle provided probable cause for Defendant's arrest for human smuggling.

Defendant knowingly and voluntarily consented to a search of her vehicle and to give statements to law enforcement officers.  She was fully advised of her Miranda

5

rights and knowingly and intelligently waived those rights.  Under the circumstances, the length of the stop was reasonable and necessary to pursue the investigation.

For these reasons I recommend that Defendant's Motion to Suppress Evidence [Doc. 24] be denied.

### III.   CONCLUSION

In sum , I **RECOMMEND** that Defendant's Motion to Suppress Evidence [Doc. 24] be **DENIED**.

Defendant's pending Motion  to Continue Arraignm ent [Doc. 16]  is hereby **DENIED AS MOOT.**    There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial.  It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this 11th day of April, 2011.

_Gerrilyn G. Brill_

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)